# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PAULETTE LASTER, individually and as
the personal representative of the Estate of
MYLES ELLIOT LASTER,

        Plaintiff,

v.        Case No.: 23-CV-1030

CITY OF MILWAUKEE, BRANDON A. GATSON,
and TIMEKA R. PARKER,

        Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

    The Defendants, City of Milwaukee, Brandon A. Gatson, and Timeka Parker, through their counsel, Evan C. Goyke, City Attorney, by William Hotchkiss, Assistant City Attorney, hereby provide this brief in support of their Motion for Summary Judgment on all claims.

## INTRODUCTION

    On July 1, 2020, between approximately 6:51 p.m. and 6:54 p.m., Myles Laster was tragically killed by Darius Anderson and Eric Gibson. (Defendants' Proposed Findings of Fact (DPFOF) ¶ 44)). Mr. Laster was killed following a verbal altercation with Kayla Klumpp where Ms. Klumpp also hit Mr. Laster's vehicle before leaving the scene. (DPFOF ¶ 10). Mr. Laster called 911 at 6:25 p.m. and again at 6:47 p.m. (DPFOF ¶ 2,21). He spoke with two City of Milwaukee employees, Brandon Gatson and Timeka Parker. (DPFOF ¶ 4, 22). In both calls, Mr. Laster described the altercation with Klumpp, but did not express that he was in any danger. (DPFOF ¶ 15-17, 37-39). Mr. Laster tells 911 that Ms. Klumpp has left the scene. (DPFOF ¶ 10,

28-29). Brandon Gatson and Timeka Parker entered the information given and created a Computer Aided Dispatch (DPFOF ¶ 40, Exhibit H). Ms. Parker told Mr. Laster that officers would not come out to Brown Deer, where he lived, and that he would have to stay there for the officers to take the report. (DPFOF ¶ 31-36). Mr. Gatson or Ms. Parker did not conduct any follow-up to see if a police officer was dispatched to Mr. Laster's location. (DPFOF ¶18-19, 41-42).

Unbeknownst to Mr. Laster, Mr. Gatson, or Ms. Parker, Ms. Klumpp left the scene and contacted Darius Anderson and Eric Gibson. Mr. Anderson and Mr. Gibson drove to where Mr. Myles was located, next to the gas station and Mr. Anderson shot and killed Mr. Laster. (DPFOF ¶ 43). Plaintiff complained of the significant delay in the police response and Ms. Parker's statement to Mr. Laster that he would need to wait at the scene for the officers to show up. (ECF No.1). However, the undisputed evidence shows that the Defendants were entirely unaware of the danger Mr. Laster was in, and Mr. Laster's murder occurred just a few minutes after his second 911 call.

Make no mistake, Mr. Laster's murder is heartbreaking. But no reasonable fact finder could find that Brandon Gatson, Timeka Parker, and the City of Milwaukee violated Mr. Laster's rights or negligently caused Mr. Laster harm based on their actions on July 1, 2020.

**STANDARD OF REVIEW**

The moving defendants seek summary judgment, pursuant to Federal Rule of Civil Procedure 56, which reads in pertinent part:

> (c) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

\*\*\*

> (e) When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.
>
> A party seeking summary judgment must demonstrate that no genuine issue of material fact exists for trial and that the movant is entitled to judgment as a matter of law.

*Hannon v. Turange*, 892 F.2d 653, 656 (7th Cir. 1990). If that showing is made and the non-moving party would bear the burden at trial on the matter that forms the basis of the motion, the non-moving party must then provide evidence to show what or which facts are in actual dispute. *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990). If he or she fails to do so, summary judgment is proper. *National Diamond Syndicate, Inc. v. UPS*, 897 F.2d 253, 260 (7th Cir. 1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Krist v. Eli Lilly and Co.*, 897 F.2d 293, 296 (7th Cir. 1990).

The parties cannot rest on mere allegations in the pleadings, *Koclanakis v. Merrimac Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990), or upon conclusory allegations in affidavits. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989). The court must draw any permissible inferences from the materials before it in favor of the non-moving party, *Plaintiff v. Pelker*, 891 F.2d 136,138 (7th Cir. 1989), as long as the inferences are reasonable. *Spring v. Sheboygan Area School District,* 865F.2d 883, 886 (7th Cir. 1989). The non-moving party <u>must show that the disputed fact is material</u>, or outcome-determinative, under applicable law. *Local 1545, United Mine Workers v. Inland Steel Coal Co.*, 876 F.2d 1288, 1293 (7th Cir. 1989) (emphasis added). "As to materiality, the substantive law will identify which facts are

material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211(1986). Summary judgment is proper against a plaintiff who fails to establish an element of his claim on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986).

Justice White, in *Anderson*, set forth the Supreme Court's position on what constitutes genuine issues of material fact precluding the entry of summary judgment. Justice White stated:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact.

477 U.S. at 247-248. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id*. at 248.

Justice White noted that this standard mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a), which dictates the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Id.* at 250. The Court indicated in *Anderson* that it has long been the law that judges are not required to submit a question to the jury merely because some evidence has been introduced by the party bearing the burden of proof. Such issues need only be submitted where the evidence is sufficient to warrant a jury verdict in favor of the party in question. This mandate requires more than a scintilla of evidence. Rather, it requires an inquiry by the court before submitting matters to juries as to whether there is

4

sufficient evidence upon which a jury could properly proceed to find a verdict for the party bearing the burden of proof. *Id.* at 251. It is incumbent upon this Court to grant summary judgment if there is no genuine issue as to any material fact, and under Fed. R. Civ. P. 56(f)(1) and (3), the Court may grant summary judgment to the non-moving party. As explained more fully below, and after a careful review of the actual record, this is the only reasonable outcome after application of the appropriate law.

The threshold question of qualified immunity is properly resolved on summary judgment because its analysis is ostensibly objective. *See Rakovich v. Wade*, 850 F.2d 1180, 1203–04 (7th Cir. 1988), *abrogated by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004). Although intertwined with a case's facts, the qualified immunity issue is a question of law for the court. *Alvarado v. Picur*, 859 F.2d 448, 452 (7th Cir. 1988).

In *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991), the United States Supreme Court "stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Id.* at 227. The Supreme Court reversed the Ninth Circuit's denial of summary judgment, holding that: The court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed... *Id.* at 227–28 (citations omitted).

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO SHOW THAT THE DEFENDANTS VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE STATE CREATED DANGER DOCTRINE.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. This language "is phrased as a limitation on the State's power to act, not as a

guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The Due Process Clause is meant "to protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 196. Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

There are two limited exceptions: 1) the special relationship exception that applies when a state takes a person into its custody and he is unable to care for himself; and 2) the state-created danger doctrine. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 988 (7th Cir. 2021). Plaintiffs have not alleged that Mr. Laster was in custody, so the first exception would not apply.

The Seventh Circuit Jury Instructions outline a Due Process: State-Created Danger theory. Plaintiff must prove: 1) Defendants acts either created a strong likelihood of serious harm to Plaintiff or increased Plaintiff's risk of serious harm; 2) Defendants were aware of the risk and consciously failed to take reasonable measures to prevent harm to Plaintiff, or Defendants acted maliciously or with intent to inflict injury; 3) It was foreseeable by Defendants that the acts would lead to injury to Plaintiff; 4) Defendants' acts caused Plaintiff's injury. Federal Civil Jury Instructions of the Seventh Circuit 7.21.

Additionally, the state's failure to protect the plaintiff must shock the conscience. *First Midwest Bank Guardian of Est. of LaPorta; Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009).

### A. Brandon Gatson and Timeka Parker were not aware of the risk that Mr. Laster faced.

Nothing in the record establishes that Brandon Gatson and Timeka Parker were aware of the risk that Mr. Laster faced. Mr. Laster's calls described a verbal altercation and a hit and run

accident. (DPFOF ¶ 5). Mr. Laster's calls do not describe an ongoing emergency, but rather the report of a previous crime in which the assailant had left the scene. (DPFOF ¶ 10, 28-29). Just as Mr. Laster did not know that Kayla Klumpp would contact Darius Anderson and Eric Gibson and that those two men would come and kill him, Brandon Gatson and Timeka Parker did not know.

        **B.       Brandon Gatson and Timeka Parker's actions were not the proximate cause of Mr. Laster's death and the injury to Mr. Laster was not foreseeable.**

Proximate cause in this context is "a fact specific inquiry, involving a consideration of time, geography, range of potential victims, and the nature of harm that occurred." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 829 (7th Cir. 2009). "To satisfy the proximate cause requirement, the state-created danger must entail a foreseeable type of risk to a foreseeable class of per-sons." *First Midwest Bank, Guardian v. City of Chicago*, 988 F.3d 978, 988–89 (7th Cir. 2021) (citing *Buchanan-Moore*, 570 F.3d at 828). "A generalized risk of indefinite duration and degree is insufficient." *Id*. at 989.

Two Seventh Circuit cases are illustrative of the proximate cause and foreseeability analysis. In *Buchanan-Moore*, a plaintiff's survivors sued several entities alleging a due process violation when a man shot and killed Plaintiff. Plaintiff alleged that the man was repeatedly arrested and released which frequently interrupted his medications, despite a history of mental illness that was well-known to the county. *Buchanan-Moore.* The Court held that while the County may have a "but-for" causal link, the Plaintiff's death was too remote a consequence to meet the proximate cause standard. *Id.* at 829.

In *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993), the Seventh Circuit held that a motorist's allegation that police officers arrested a sober driver while leaving behind an

7

obviously drunk passenger who then drove the car and was involved in a collision was sufficient to state a claim. *Reed*. The court emphasized that this was a close question. *Id.* at 1127. The court also emphasized that the dangers presented by drunk drivers are familiar and specific. *Id.*

Based on the information available to defendants Brandon Gatson and Timeka Parker, the injury to Mr. Laster was not foreseeable. Different from *Reed*, the danger that a verbal argument with a woman who had left the scene would then result in two other men coming back to the scene to shoot and kill Plaintiff is not "familiar and specific."

Further, while Plaintiff complains of the significant delay in an officer being dispatched to Mr. Laster's location, that significant delay does not have the requisite causal link to establish proximate cause. Mr. Laster called 911 at 6:21 p.m. and 6:47 p.m. (DPFOF ¶ 2, 21). Approximately between 6:51 p.m. and 6:54 p.m., Mr. Laster was shot and killed. (DPFOF ¶ 44). As such, any argument Plaintiff may make regarding Brandon Gatson or Timeka Parker's actions after 6:54 p.m. is irrelevant to both the but-for causation analysis and the proximate cause determination. For these reasons, Plaintiff's injury was not foreseeable and Defendants' actions were not the proximate cause of the injury.

    **C.**  **Brandon Gatson and Timeka Parker's actions do not shock the conscience.**

The state-created danger exception "exists when the state affirmatively places a particular individual in a position of danger the individual would not have otherwise faced." *Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015). The exception is narrow and applies in "rare and often egregious" circumstances "where the state creates or increases a danger to an individual." *Id.* at 917.

"The Supreme Court has held that state action that shocks the conscience is conduct which may be deemed 'arbitrary in the constitutional sense.'" *Jackson v. Indian Prairie Sch.*

*Dist*. 204, 653 F.3d 647, 654 (7th Cir. 2011); citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Only the most egregious official conduct will satisfy this stringent inquiry," such that "[m]aking a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson* at 654-55. "We have previously noted that while the "shocks the conscience" standard lacks precise measurement, only conduct falling towards the more culpable end of the tort law spectrum of liability will be found to shock the conscience. *Id.* citing *King ex rel. King v. East St. Louis School Dist. 189*, 496 F.3d 812, 818–19 (7th Cir. 2007); *see also DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 202 (1989).

There are no facts within the record showing that Brandon Gatson or Timeka Parker's actions "shock the conscience." Brandon Gatson and Timeka Parker did not know the danger that Mr. Laster was in. The mere fact that Brandon Gatson or Timeka Parker could have contacted a supervisor to follow up with why a squad had not been assigned or contacted Mr. Laster, does not meet "the most egregious official conduct." The fact that Ms. Parker, again without knowing the danger Mr. Laster was in, told Mr. Laster that police would not go to his house to take his report or told him to stay in the car does not meet the "most egregious official conduct." For these reasons, Plaintiff's substantive due process: state-created danger theory should be dismissed.

## II.   PLAINTIFF HAS FAILED TO SHOW THAT DEFENDANTS VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS UNDER ANY OTHER THEORY.

Plaintiff has captioned Count Three of the Amended Complaint as an abuse of state power. Defendants have not found Seventh Circuit case law that describes a substantive due process claim as an abuse of state power claim. Within that section, Plaintiff alleges that Defendants Brandon Gatson and Timeka Parker violated the due process clause by

demonstrating a reckless and arbitrary exercise of state power and that violation resulted in the deprivation of Mr. Laster's right to life.

A state does not deprive a person of his life in violation of the Fourteenth Amendment merely by failing to prevent his death, but does violate the amendment if the death was caused by the reckless act of an employee of the state acting within the scope of his or her employment. *Slade v. Bd. of Sch. Directors of City of Milwaukee*, 702 F.3d 1027, 1029 (7th Cir. 2012). The court in *Slade* believes it was unclear whether the standard for recklessness has a knowledge requirement, or whether it is enough that the risk is obvious. *Id.* However, more recently, the Seventh Circuit has stated a plaintiff must prove that the officer acted with criminal recklessness or deliberate indifference. *Flores v. City of S. Bend*, 997 F.3d 725, 729 (7th Cir. 2021). Criminal recklessness serves as a proxy for intent. *Id.* The plaintiff must demonstrate that the defendant had actual knowledge of impending harm which he consciously refused to prevent. *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996). The state actor must have sufficient knowledge of the danger that one can infer he intended to inflict the resultant injury. *Id.* (citing *Salazar v. City of Chicago*, 940 F.2d 233, 239 (7th Cir. 1991).

However, given the facts in this case, Plaintiff cannot show recklessness, deliberate indifference, or knowledge of impending harm. Plaintiff cannot show that the risk to Mr. Laster was known by Brandon Gatson or Timeka Parker. Plaintiff cannot show that the risk to Mr. Laster was obvious to Brandon Gatson or Timeka Parker. In both of Mr. Laster's 911 calls, he never stated that Ms. Klumpp was still on scene or said she would come back. (DPFOF ¶ 10, 38). Mr. Laster never stated that his life was in danger. (DPFOF ¶ 15, 37). Arguably, the most concerning statements regarding Mr. Laster's safety was that Ms. Klumpp tried to enter the gas station, Ms. Klumpp hit his car with her car, and Mr. Laster's brother told him that Ms. Klumpp

"looked like she was about to do some bullshit. (DPFOF ¶ 7, 10, 27). Defendants submit that even taking those statements out of context, these statements are insufficient to establish the requisite knowledge of the danger that Ms. Klumpp would contact two men, who would come back to the area and murder Mr. Laster. Further, those statements must be heard with the added context that Mr. Laster stated it was a verbal altercation, stated that Ms. Klumpp had left the scene, and stated nothing to indicate that he believed his life was in danger. Again, the timeline of events is critical as well. Mr. Laster was killed only a few minutes after he finished the second 911 call. (DPFOF ¶ 2, 21, 44). Similar to the state-created danger theory, Plaintiff additionally cannot show that Defendants' actions were the proximate cause of the injury to Mr. Laster. For these reasons, Plaintiff's substantive due process claim should be dismissed.

### III. DEFENDANTS BRANDON GATSON AND TIMEKA PARKER ARE ENTITLED TO QUALIFIED IMMUNITY.

Under the qualified immunity doctrine, public officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Once qualified immunity is raised, the plaintiff bears the burden to show that his rights were violated and that the law concerning the proferred right was clearly established at the time the challenged conduct occurred. *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). If the plaintiff fails to establish either prong, e.g. constitutional violation or clearly established prohibition, then immunity applies. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Supreme Court has often warned against defining "clearly established law at too high a level of generality." *See, e.g. City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9 (2021) (*per curium*), *City & Cty. of S.F. v. Sheehan,* 575 U.S. 600, 613 (2015), *Ashcroft*, 563 U.S. at 742,

11

Case 2:23-cv-01030-NJ    Filed 10/11/24    Page 11 of 19    Document 40

*Saucier*, 533 U.S. at 202. "The dispositive question is whether the violative nature *of particular conduct* is clearly established ... This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Zimmerman v. Doran,* 807 F.3d 178, 182 (7th Cir. 2015), quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal citations omitted).

Specificity is especially important in the Fourth Amendment context, where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 11, quoting *Saucier*, 533 U.S. at 205. For example, "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." *City & Cty. of S.F.,* 575 U.S. at 613.

Even when an officer is mistaken as to what the law requires or allows, such mistakes – if reasonable – are entitled to immunity. *Saucier*, 533 U.S. at 205. In assessing the reasonableness of a mistake, courts must consider "only the facts that were knowable to the defendant officers [at the time]." *White v. Pauly*, 580 U.S. 73, 76-77 (2017), citing *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015). Bearing in mind that, "[p]ublic officials are entitled to immunity until it has been authoritatively decided that certain conduct is forbidden," *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir. 1987), and that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Qualified immunity is supposed to protect officers in the close case, and it therefore must apply to the officer's snap judgment in a legally hazy area. *Cf. Stanton v. Sims*, 134 S. Ct. 3, 7, 187 L. Ed.2d 341 (2013) (*per curiam*) (finding an officer entitled to qualified immunity for

12

chasing fleeing misdemeanant onto the curtilage of a home because of a split in case law on the propriety of doing so)." *White v. Stanley*, 745 F. 3d 237, 241 (7th Cir. 2014).

Plaintiff cannot show that a sufficiently analogous case to establish a clear constitutional violation by Brandon Gatson or Timeka Parker. As *Deshaney* makes clear, there is no right of protection from private violence. There is no case law clearly establishing that advising a 911 caller to wait in his location for a police officer to be dispatched is a constitutional violation. There is no case law clearly establishing that failing to follow up with a supervisor to find out why an officer had not been dispatched or arrived to assist someone is a constitutional violation. There is no case law establishing that any of Brandon Gatson or Timeka Parker's actions violate clearly established law.

For these reasons, even if the court finds a constitutional violation by Brandon Gatson or Timeka Parker, the court should find that right is not clearly established and dismiss Plaintiff's claims.

### IV. PLAINTIFF HAS FAILED TO SHOW THAT THE DEFENDANTS WERE NEGLIGENT AND THAT NEGLIGENCE CAUSED PLAINTIFF HARM.

The Wisconsin Supreme Court has held that "[i]n Wisconsin, the sufficiency of a negligence claim depends on . . . the following four required elements: '(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury.'" *Hornback v. Archdiocese of Milwaukee*, 313 Wis.2d 294, 305, 752 N.W.2d 862, 867 (2008), citing *Gritzner v. Michael R.*, 235 Wis.2d 781, ¶ 19, 611 N.W.2d 906 (2000).

The "first element, a duty of care, is established under Wisconsin law whenever it was foreseeable to the defendant that his or her act or omission to act might cause harm to some other

person." *Id.*, 313 Wis.2d at 309. "Under this framework, a person is negligent' 'if the person, without intending to do harm does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.'" *Id*. at 310. "The more specific component of a standard negligence inquiry involves whether there has been a breach of that ordinary care under the circumstances of the case." *Id*. "Thus, in the vast majority of cases, whether a defendant has acted negligently is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances." *Id*. Whether a defendant failed to exercise ordinary care and is negligent as a matter of law (i.e., based on the facts presented, no properly instructed, reasonable jury could find the defendant [exercised] ordinary care') is a question of law." *Id*. at 305, citing *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87 ¶ 60, 236 Wis.2d 435, 613 N.W. 2d 142.

A duty may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. *Scheeler v. Bahr*, 41 Wis.2d 473, 477, 164 N.W.2d 310, 312 (1969). "A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones." *A. E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 484, 214 N.W.2d 764, 766 (1974).

Plaintiff cannot establish that the Defendants breached a recognizable duty of care to Plaintiff and that the breach caused Plaintiff harm. Again, focusing on the timeline of Mr. Laster's death, Mr. Laster was killed within a few minutes after the second 911 call. (DPFOF ¶

14

2, 21, 44). The short timeframe renders any potential unreasonable or negligent act that occurs after approximately 6:54 p.m. irrelevant to the analysis of causal negligence. No reasonable fact finder could find that Defendants were negligent and that negligence caused Plaintiff harm. For that reason and the reasons discussed below, Plaintiff's negligence claim should be dismissed.

> V. **PUBLIC POLICY DEMANDS THAT SUMMARY JUDGMENT BE GRANTED TO DEFENDANTS IN THIS CASE**

The Wisconsin Supreme Court has confirmed that liability in negligence cases can be limited by consideration of public policy factors, *Hornback*, 313 Wis.2d at 306, and that negligence and liability are two distinct concepts. *Id*. at 308. The Court has instructed that "[i]n Wisconsin, we recognize six public policy grounds upon which this court may deny liability even in the face of proven or assumed negligence: 1) 'the injury is too remote from the negligence'; (2) the recovery is 'wholly out of proportion to the culpability of the negligent tort-feasor'; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery 'would place too unreasonable a burden' on the negligent tort-feasor; (5) recovery would be 'too likely to open the way to fraudulent claims' and (6) recovery would enter into 'a field that has no sensible or just stopping point.'" *Hornback*, 313 Wis.2d at 320, citing *Hoida, Inc. v. M & I Midstate Bank*, 291 Wis. 2d 283, ¶ 41, 717 N.W.2d 17 (2006).

Courts may refuse to impose liability on the basis of any of these factors, without full resolution of a cause of action by trial. *Hornback*, 313 Wis.2d at 320-321. "A finding of nonliability on the basis of 'public policy is a question of law which the court alone decides." *Id*. at 321. Furthermore, courts may make a public policy determination without first remanding for an analysis of the negligence claim, where the facts presented are simple to ascertain and the public policy questions have been fully presented. *Id*. at 322. "Even if the elements of

negligence are established or assumed in a case, liability is not guaranteed, but may still be restricted by Wisconsin courts on the basis of judicially recognized policy factors." *Id*. at 308.

In the present case, looking at public policy ground number one, the injury to Mr. Laster is too remote from the negligence. It is not remote in the typical sense of being far off in distance or time from the allegedly negligent act. Instead, the injury is remote from the negligence in that Plaintiff's complaint of the delay of almost two hours for a squad to respond to Mr. Laster's call is not relevant, because Mr. Laster was killed less than ten minutes after making the second 911 call.

Further, looking at public policy ground number three, the harm caused is highly extraordinary given the negligent act. Again, the harm that occurs to Mr. Laster is appalling. But given the time frame, a delay of just over thirty minutes to respond to a 911 call reporting a verbal argument and a hit and run is minimal. The harm of being tragically murdered is extraordinary given the allegedly negligent act.

Lastly, recovery would enter into a field that has no sensible or just stopping point. As outlined above in the substantive due process arguments, the state has no duty to protect from private violence. That is even further true when the Defendants are unaware of the danger, as they were here. A recovery in this lawsuit opens the door to recoveries in any instance where law enforcement is not able to respond fast enough to a 911 call, regardless of what the governmental entity is aware of based on the 911 call.

For these reasons, even if the court were to find that a jury could find any of the Defendants negligent, public policy demands that this court deny liability as to Plaintiff's negligence claim.

## VI. THE DEFENDANTS ARE ENTITLED TO DISCRETIONARY IMMUNITY.

Even if the court finds that the Defendants may be negligent, Defendants are entitled to immunity from liability under Wis. Stat. § 893.80(4). Wis. Stat. § 893.80(4) states, "No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

This immunity has become synonymous to immunity from discretionary acts. *Linville v. City of Janesville*, 174 Wis.2d 571, 584, 497 N.W.2d 465 (Ct.App.1993), affirmed, 184 Wis.2d 705, 516 N.W.2d 427 (1994). Conversely, there is no immunity for acts that are ministerial in nature or involve a required response to a known present danger. *Hoskins v. Dodge Cnty.*, 2002 WI App 40, ¶ 15, 251 Wis. 2d 276, 291, 642 N.W.2d 213, 220. An "exception to the general rule of public officer immunity exists where the public officer's or employee's duty is absolute, certain and imperative, involving merely the performance of a specific task and (1) the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for the exercise of judgment or discretion, or (2) there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion. . ." *C.L. v. Olson*, 143 Wis. 2d 701, 717, 422 N.W.2d 614, 620 (1988) (internal citations removed).

Wis. Stat. § 893.80(4) immunizes government actors against liability for "legislative, quasi-legislative, judicial, or quasi-judicial" acts, "which have been collectively interpreted to include *any act that involves the exercise of discretion and judgment.*" *Lodl,* 253 Wis. 2d 323,

17

Case 2:23-cv-01030-NJ    Filed 10/11/24    Page 17 of 19    Document 40

336 at ¶ 21, 646 N.W.2d 314, 321 (2002) (citations omitted, emphasis added); see also *Scott v. Savers Property and Cas. Ins. Co.,* 2003 WI 60 ¶ 15, 262 Wis. 2d 127, 663 N.W.2d 715; *Kierstyn v. Racine Unified Sch. Dist.,* 228 Wis. 2d 81, 88-89, 596 N.W.2d 417 (1999).

The Wisconsin Supreme Court has repeatedly held that government actors routinely exercise discretion and judgment in their day-to-day activities, and are thus entitled to immunity while performing a highly diverse range of job functions. *See, Scott,* 262 Wis. 2d 127 (immunity extended to guidance counselor who gave erroneous advice, causing student to lose full scholarship); *Lodl,* 253 Wis. 2d 323 (immunity applied to officer's decisions made when responding to a "blackout" at a controlled intersection); *Kierstyn,* 228 Wis. 2d 81 (immunity granted to benefits specialist who gave incorrect advice regarding teacher's benefits eligibility); *Kimps v. Hill,* 200 Wis. 2d 1, 10-11, 546 N.W.2d 151 (1996) (instructor who failed to tighten loose screws on heavy volleyball standard was immune from liability); *Lifer v. Raymond,* 80 Wis. 2d 503, 259 N.W.2d 537 (1977) (driver's license examiner's decision that applicant could safely operate motor vehicle was protected by immunity). The Wisconsin Supreme Court specifically advised in *Kimps v. Hill*, 200 Wis.2d 1, 546 N.W.2d 151 (2014), that "[j]ust because a jury can find that certain conduct was negligent does not transform that conduct into a breach of a ministerial duty." *Id.* at 11. Rather a ministerial duty is found only when the duty is absolute, certain, and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode, and occasion for its performance with such certainty that nothing remains for judgment or discretion. *Id*. at 10-11.

Here, any perceived failure to elevate the delayed response to a supervisor would be a discretionary act. Additionally, any perceived failure to take affirmative steps to shorten the response time would be a discretionary act. Plaintiff cannot establish that any allegedly negligent

18

actions of the Defendants were such specific tasks as to become ministerial. As such, Plaintiff's claim should fail because the Defendants are entitled to discretionary immunity.

## CONCLUSION

In light of the foregoing, Defendants request that the Court grant Defendants' Motion for Summary Judgment on all claims and that the Court dismiss this action in its entirety.

Dated and signed at Milwaukee, Wisconsin this 11th day of October, 2024.

EVAN C. GOYKE
City Attorney

*s/ William Hotchkiss*
WILLIAM HOTCHKISS
Assistant City Attorney
State Bar No. 1112878
*Attorneys for Defendants*
*City of Milwaukee, Timeka Parker*
*and Brandon Gatson*

**ADDRESS:**
200 E. Wells Street
CH 800
Milwaukee, WI 53202
(414) 286-2601 – Telephone
(414) 286-8550 – Facsimile
Email: whotch@milwaukee.gov

1032-2023-1130.001:293993